UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rhoda Payne,

Plaintiff,

- *against* -

Commissioner of Social Security,

Defendant.

13 Civ. 1673 (CS)(LMS)

**REPORT AND
RECOMMENDATION**

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.**[1]

Plaintiff Rhoda Payne, proceeding pro se, brings this action pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3) seeking judicial review of a final decision by defendant Commissioner of

Social Security (hereinafter "defendant" or "the Commissioner"), which found that plaintiff was

not entitled to a Period of Disability, Disability Insurance Benefits, or Supplemental Security

Income (hereinafter "SSI") under the Social Security Act (hereinafter "the Act"). Docket Entry

#2, Complaint at ¶¶ 1, 7. Currently pending before the Court is defendant's motion for judgment

on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Docket Entry

#16, Defendant's Motion; Docket Entry #17, Mem. of Law. Plaintiff has filed no opposition to

the motion. For the reasons that follow, I conclude, and respectfully recommend that Your

Honor should conclude, that defendant's motion for judgment on the pleadings should be

granted.

---

[1] On March 22, 2013, Judge Seibel, the District Judge to whom this matter is assigned,
referred this application to me for preparation of a Report and Recommendation. Docket Entry
#8, Order of Reference.

I.   **BACKGROUND**

A.   **Procedural History**

On March 12, 2010, plaintiff filed an application for a Period of Disability and Disability Insurance Benefits.  Docket Entry #14, Administrative Record at 33, 39.  On March 22, 2010, she filed an application for SSI.  Id. at 39.  Both applications stemmed from disabilities that allegedly began on December 18, 2008.  Id. at 143.[2]  Plaintiff's claim of disability was based upon a number of conditions from which she suffered, including schizophrenia, bi-polar disorder, anxiety disorder, uterine fibroids, and a cyst.  Id. at 147.  Plaintiff's applications were denied on May 18, 2010, Id. at 33-34, 46-61, stating "that [her] condition is not severe enough to keep [her] from working," Id. at 52, and that she "can perform medium work."  Id.  Plaintiff thereafter requested a hearing by an Administrative Law Judge ("ALJ").  Id. at 65.  Following a hearing, ALJ Solomon, in a written decision, concluded that plaintiff was (1) not disabled under sections 216(i) and 223(d) of the Act and was thus not entitled to a Period of Disability or Disability Insurance Benefits, and (2) was not disabled under section 1614(a)(3)(A) of the Act and was therefore not entitled to SSI.  Id. at 35-45.  Plaintiff thereafter asked the Appeals Counsel to review the ALJ's decision.  Id. at 94-96. On January 23, 2013, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner.  Id. at 1-6.

On March 11, 2013, Plaintiff commenced this action, challenging the ALJ's denial of her applications for a Period of Disability, Disability Insurance Benefits, and SSI.  Complaint at ¶ 1.  Defendant answered on August 2, 2013.  Docket Entry #13, Answer.  On August 5, 2013, this

_____

[2]  Plaintiff previously received Disability Insurance Benefits from June 5, 1996, until February, 2007.

Court issued an order setting a schedule for defendant to move for judgment on the pleadings. Docket Entry #15, Scheduling Order. The Order advised that "[s]hould [p]laintiff fail to oppose [d]efendant's motion for judgment on the pleadings, this Court may recommend that the motion be granted by default." Id. at 1. On September 19, 2013, defendant moved for judgment on the pleadings, and it served plaintiff with a copy of the motion the following day. Docket Entry #16, Motion; Docket Entry #17, Memo. of Law; Docket Entry #20, Certificate of Service. Plaintiff's opposition to defendant's motion was due thirty days after the service and filing of the motion. See Scheduling Order. To date, plaintiff has neither filed an opposition to defendant's motion nor made a request for an extension of time to file an opposition.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Standard of Review

An unsuccessful claimant for benefits under the Act may seek judicial review in federal court of the Commissioner's denial of the application for such benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of review in an appeal from a denial of social security involves two levels of inquiry. The court must first evaluate whether the Commissioner applied the correct legal standard in determining that the plaintiff was not disabled. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998). "Failure to apply the correct legal standards is grounds for reversal" of the ruling. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Upon a conclusion that the Commissioner applied the correct legal standard, the court must decide whether there exists in the administrative record substantial evidence to support the Commissioner's decision. See Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales,

3

402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted). When evaluating whether substantial evidence in the record supports the Commissioner's decision, it is important that the court "carefully consider[] the whole record, examining evidence from both sides." Tejada, 167 F.3d at 774 (citing Quinones v. Chater, 117 F.3d 29, 33 (2d Cir. 1997)). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). If the "decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its own] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). Moreover, the ALJ "has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**B.    Determining Disability**

In the context of a claim for a Period of Disability, Disability Insurance Benefits, or SSI, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i); 42 U.S.C. § 423(d); 42 U.S.C. § 1382c(a)(3)(A). Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow in evaluating a disability claim for SSI. See 20 C.F.R. §§ 404.1520(a), 416.920(a)(4).

The Commissioner first considers whether the claimant is engaged in "substantial gainful activity." Id. at § 416.920(a)(4)(i), (b). If the claimant is so engaged, then the Commissioner will conclude that the claimant is not disabled. Id. The second consideration in the Commissioner's determination is the medical severity of the claimant's impairment. Id. at

4

§ 416.920(a)(4)(ii).  To qualify as having a severe impairment, a claimant must establish that he or she has an "impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities."  Id. at § 416.920(c).  If it is determined that the claimant suffers from a severe impairment, the Commissioner will decide if the impairment meets or equals one of the impairments presumed severe enough to render one disabled, listed in Appendix 1 to Part 404, Subpart P of the Social Security Regulations.  See id. at § 416.920(a)(4)(iii),(d).  If the claimant's impairment is not on the list, the Commissioner evaluates the claimant's residual functional capacity, taking into consideration all of the relevant evidence.  See id. at § 416.920(e).  Fourth, the Commissioner decides whether the claimant can do his or her past relevant work.  See id. at § 416.920(a)(4)(iv),(e)-(f).  Finally, if the Commissioner finds that the claimant cannot do his or her past relevant work, the Commissioner will then consider the claimant's residual functional capacity, age, education, and work experience to see if he or she can make an adjustment to other work.  See id. at § 416.920(a)(4)(v),(g).  The same analysis is applicable for determining whether a claimant is disabled for purposes of a Period of Disability or a Disability Insurance Benefits claim.  See id. at § 416.920(a)-(f).

The claimant bears the burden of proof on the first four steps of this analysis.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citation omitted).  If, during the one of the first four steps of the analysis, the ALJ concludes that the claimant is not disabled, then he or she need not proceed with the remaining steps of the analysis.  See Williams v. Apfel, 204 F.3d 48, 49 (2d Cir. 2000).  If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of other work.  DeChirico, 134 F.3d at 1180 (citation omitted).

III.   **DISCUSSION**

Here, the Complaint asserts nothing more than boilerplate allegations that the  the ALJ's decision was not supported by substantial evidence.  Complaint at ¶ 9.  Since plaintiff's March 11, 2013, filing of the Complaint and a request to proceed in forma pauperis, plaintiff has taken no action in the matter.  Specifically, plaintiff has not opposed defendant's motion for judgment on the pleadings, despite being notified by the Court of the briefing schedule and that failure to oppose the motion might result in the motion being granted on default. See Scheduling Order at 1.  Further, plaintiff has not moved for an extension of time to oppose defendant's motion.

ALJ Solomon properly applied the aforementioned five-step analysis, concluding that plaintiff was not disabled within the meaning of the Act.  As to step one, the ALJ concluded that plaintiff "has not engaged in substantial gainful activity since December 18, 2008, the alleged onset date."  Administrative Record at 41.  He noted that plaintiff earned $125.68 in 2009, but recognized that such amount did not qualify as substantial gainful activity. Id.  Turning to step two, ALJ Solomon found that plaintiff suffered from a number of severe impairments, including depression, mood disorder, and anxiety disorder. Id.  He stated that such impairments "cause more than minimal limitations in the claimant's mental ability to do basic work activities." Id.

Applying the third step, however, the ALJ concluded that plaintiff's impairments, when considered individually or taken together, did not meet or medically equal one of the statutory impairments. Id. at 41-42.  He specifically noted that plaintiff's mental impairments, which formed part of the basis of her claims, did not "result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." Id. at 41.  The ALJ addressed plaintiff's claims

6

that her mental health issues caused her to suffer from, among other things, a lack of focus, a lack of memory, a lack of energy, and mood swings. Id. at 42.  He stated that, while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," Id. at 43, her statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the . . . residual functional capacity assessment." Id.  The ALJ added that plaintiff's limited history of mental illness undermined her allegations concerning the severity of such impairments.  See id. ALJ Solomon noted a Federation Employment and Guidance Service, Inc. (FEGS) consultant observed that plaintiff had some impairment when dealing with stress and maintaining attention, but that she dealt normally with the public and co-workers.  The ALJ added that, "[a]lthough [the FEGS consultant] stated that the claimant could not adhere to a regular work routine due to a chronic mental illness, she reports that the claimant is 'oriented and coherent.' " Id. at 42 (citation omitted).  ALJ Solomon also stated that, despite the FEGS consultant's conclusion that plaintiff suffered from some moderate impairments, "there is insufficient evidence that the claimant would be unable to maintain a regular work routine." Id.  The ALJ relied on the report of Dr. Fujiwaki, who opined that plaintiff was able to function.  ALJ Solomon added that no medical evidence in the record established that plaintiff's uterine firboids caused her any significant physical limitation. Id. at 43.

ALJ Solomon, turning to step four, concluded that, despite plaintiff's impairments, she was not disabled because her "age, education, work experience, and residual functional capacity," Id. at 44, enabled her to "maintain a regular schedule and perform repetitive work in [a] low stress setting." Id. at 42.

After examining the record as a whole, the Court finds that substantial evidence supports

7

the ALJ's decision.  ALJ Solomon's decision was based on a thorough review of plaintiff's

medical history and the evaluations and opinions of the FEGS consultant; Dr. Haruyo Fujiwaki,

a psychological consultive examiner; and Dr. Aurelio Salon, a consultive examiner.  Id. at 42-44.

The FEGS consultant opined that plaintiff's mental illness caused "marked restrictions of

activities of daily living that prevents adherence to a regular work routine which prevents

employment."  Id. at 222.  The ALJ's decision to reject such conclusion was supported, in part,

by FEGS consultant's statement that plaintiff was able to engage in numerous activities of daily

living, such as washing dishes, washing clothes, sweeping or moping, vacuuming, making beds,

shopping for groceries, cooking meals, reading, bathing and dressing dress herself.  Id. at 213.

Dr. Fujiwaka, who evaluated plaintiff, observed that plaintiff was responsive and

cooperative, had average intellectual functioning stated that she was "[c]oherent" and "goal

directed."  Id. at 265.  He also noted that plaintiff's attention and concentration were "intact," but

that her memory skills were "[m]ildly impaired."  Id. at 266.  Turning to plaintiff's ability to

work, Dr. Fujiwaka observed:

> Vocationally, [the claimant] is able to follow and understand simple directions and
> instructions.  She can perform simple tasks independently.  She can maintain
> attention and concentration to a certain extent.  She is able to maintain a regular
> schedule with some difficulty due to physical pain.  She can learn new tasks.  She
> can perform complex tasks and needs supervision.  She can make simple decisions.
> She can have some difficulty relating with other and dealing with stress
> appropriately.  Difficulties are caused by alcohol abuse and pelvic pain.

Id. at 266-67.

The ALJ's conclusion is further supported by the report of Dr. Salon, who performed an

examination of plaintiff.  Dr. Salon concluded that, "on the basis of the history and physical just

performed, there are no objective findings to support the fact that the claimant would be

restricted in her ability to sit or stand, or in her capacity to climb, push, pull, or carry heavy

objects." Id. at 271.

Because this Court finds that substantial evidence supports the ALJ's decision, and because the ALJ's decision is free from legal error, I conclude, and respectfully and recommend that Your Honor should conclude, that defendant's motion for judgment on the pleadings should be granted and this case should be dismissed with prejudice.[3] See Berry v. Schweiker, 675 F.2d 464 (2d Cir.1982).

## IV.   **CONCLUSION**

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that defendant's motion for judgment on the pleadings, Docket Entry #16, should be granted, and this case should be dismissed with prejudice.

## V.   **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

---

[3]Should plaintiff file substantive objections to this Report and Recommendation, I respectfully request that Your Honor refer the motion back to me for a more detailed analysis of the claims.

Requests for extensions of time to file objections must be made to Judge Roman.

Dated: ~~November __~~, 2013 *December 11*
      White Plains, New York

                    Respectfully submitted,

                    Lisa Margaret Smith
                    United States Magistrate Judge
                    Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Cathy Seibel, U.S.D.J.

Rhoda Payne
2034 7th Avenue
Apt# 1F
New York, NY 10027

Susan D. Baird
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007